UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,      :
      :
      v.      :
      :
      :  Cr. No.:  05-225 (PLF)
      :
BRUCE A. SCHIFFER      :
      Defendant.      :

## UNITED STATES MEMORANDUM AND
## PROFFER IN SUPPORT OF PRETRIAL DETENTION

The United States of America, through its attorney, the United States Attorney for the

District of Columbia, respectfully asks this Court to order the pretrial detention of the defendant

on grounds of the commission of a crime of violence and risk of flight.  In support of this motion,

the United States submits this Memorandum and Proffer in Support of Pretrial Detention, in

addition to evidence to be proffered and representations to be made to the Court at the detention

hearing, currently set for June 16, 2005, and any subsequent detention hearing.

### A.  INTRODUCTION

On June 9, 2005, the grand jury returned an eleven-count indictment charging defendant

Bruce A. Schiffer with one count of Advertising Child Pornography, in violation of 18 U.S.C. §

2251(d), six counts of Transporting Child Pornography, in violation of 18 U.S.C. §2252(a)(1),

three counts of Receiving Child Pornography, in violation of 18 U.S.C. § 2252(a)(2), and one

count of Possession of Child Pornography, in violation of 18 U.S.C. § 2252(a)(4).  Defendant

was arrested on warrant on June 10, 2005 at his residence in Washington, D.C.  The defendant

was presented the next business day in United States District Court for the District of Columbia

before United States Magistrate Judge John M. Facciola on June 13, 2005. At that presentment hearing, as requested by the government, the court ordered defendant detained as posing a danger and being a risk of flight, pending the detention hearing, currently set for June 16, 2005.

### B. APPLICABLE LAW

The United States seeks to have the defendant held without bond pursuant to the Bail Reform Act of 1984, codified at 18 U.S.C. §§ 3141-3150. The United States's Motion is based on Section 3142(f)(1)(A), and Section 3142(f)(2)(A) because two of the statutory conditions to hold a person without bond exist in this case: the defendant committed a crime of violence and the defendant poses a serious risk of flight. Under 18 U.S.C. § 3156(a)(4), a "crime of violence" is defined not only as "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another" or "any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense," but also under Subsection (4)(C) as "any felony under chapter 109A, 110, or 117." Chapter 110 is entitled "Sexual Exploitation and other Abuse of Children," and includes all four of the crimes with which defendant is charged, Advertising Child Pornography, in violation of 18 U.S.C. § 2251(d), Transporting Child Pornography, in violation of 18 U.S.C. §2252(a)(1), Receiving Child Pornography, in violation of 18 U.S.C. § 2252(a)(2), and Possession of Child Pornography, in violation of 18 U.S.C. § 2252(a)(4).

Each of these crimes under chapter 110 is a felony carrying very substantial penalties: Advertising Child Pornography, in violation of 18 U.S.C. § 2251(d), carries a minimum term of fifteen (15) years in prison and maximum of thirty (30) years in prison, a fine of $250,000, and a

term of supervised release up to life; Transporting Child Pornography, in violation of 18 U.S.C. §2252(a)(1), carries a minimum of five (5) years in prison, a maximum of twenty (20) years in prison, a fine of $250,000, and a term of supervised release up to life; Receiving Child Pornography, in violation of 18 U.S.C. § 2252(a)(2), carries a minimum of five (5) years in prison, a maximum of twenty (20) years in prison, a fine of $250,000, and a term of supervised release for up to life; and Possession of Child Pornography, in violation of 18 U.S.C. § 2252(a)(4), carries maximum of ten (10) years in prison, a fine of $250,000, and a term of supervised release of life.

Based upon the discussion below, the United States respectfully submits that there is no condition or combination of conditions which "will reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community." Accordingly, the defendant should be detained without bail pending trial pursuant to 18 U.S.C. § 3142(e)-(f).

As a preliminary matter, and as this Court is well aware, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. §3142(f). The United States and the defendant may proceed by way of "proffer or otherwise," id., and hearsay is permitted. E.g., United States v. Winsor, 785 F.2d 755, 756 (9th Cir. 1986). Moreover, at a detention hearing, the United States is not required to "spell out in precise detail how the government will prove its case at trial, nor specify exactly what sources it will use." United States v. Martir, 782 F.2d 1141, 1145 (2d Cir. 1986). "The defendant may not use a pretrial detention hearing as a trial on the underlying indictment or as a method for getting discovery from potential witnesses . . . . Nor may the defendant require the government to divulge its confidential sources in such a

proceeding." United States v. Williams, 798 F. Supp. 34, 36 (D.D.C. 1992) (Sporkin, J.).  If

there is any examination, federal courts have limited that examination to the disputed issues,

since the detention hearing should neither be turned into a mini-trial nor used as a subterfuge to

obtain discovery.  See, e.g., United States v. Suppa, 799 F.2d 115, 120 (3rd Cir. 1986).  Finally,

without a defense proffer that the United States's information is incorrect, the defendant is not

permitted to challenge the government's evidence.  United States v. Winsor, supra, 785 F.2d at

757.

       In determining whether to detain the defendant, the Court may consider the following

factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence

against the defendant; and (3) the defendant's character, physical and mental condition, family

ties, employment history, past conduct, and criminal history.  18 U.S.C. § 3142(g).  The burden

of proof on the United States on the issue of flight is "preponderance of the evidence."  United

States v. Vortis, 785 F.2d 327, 328-329 (D.C. Cir.), cert. denied, 479 U.S. 841 (1986).  As set

forth in Vortis, the law of this Circuit is clear and unambiguous on this point:

> Although appellant argues that the government should be required to establish risk
> of flight by clear and convincing evidence, we hold that the magistrate correctly
> applied the preponderance of the evidence standard.  We reach this conclusion for
> several reasons.  First, although the statute explicitly states that a finding that a
> person should be detained pretrial as a danger to the community must be
> supported by 'clear and convincing evidence,' 18 U.S.C. § 3142(f), it is silent on
> the burden of proof needed for a finding that a person poses a risk of flight.  By
> contrast, in the context of bail pending appeal, the statute provides for detention
> unless the court finds, by clear and convincing evidence, that the person is not
> likely to flee or pose a danger to the community.  18 U.S.C. § 3143(b).  The
> statutory structure therefore suggests that Congress intended a different burden of
> proof for pretrial detention because of risk of flight than for danger to the
> community.  The standard of proof applicable to other kinds of pretrial
> proceedings is the preponderance of the evidence and we find that to be the
> appropriate burden for establishing risk of flight.  Id.

### C.  NO CONDITION OR COMBINATION OF CONDITIONS WILL REASONABLY ASSURE THE APPEARANCE OF THE DEFENDANT AS REQUIRED, OR THE SAFETY OF THE COMMUNITY.

**(1) The Nature and Circumstances of the Offenses Committed**

If called to testify about the nature and circumstances of the offenses with which the defendant is charged, Audrey McNeil, Special Agent of the Federal Bureau of Investigation, would testify to the following facts involved in this case:

**A.  Operation of the File Server to Solicit, Send, Receive and Possess Child Pornography**

The defendant spent months operating a file server that spread the most vile sort of child pornography over the internet and he even put up an advertisement aimed at young boys in an effort to obtain more sexually explicit images which he could collect and disseminate.  Fully to comprehend the modus operandi of defendant, it is necessary to be familiar with the technology he employed to commit his crimes and how these crimes were discovered.  On October 13, 2004, a computer forensic investigator with the High Technology Investigative Unit ("HTIU") of the Child Exploitation and Obscenity Section ("CEOS") of the Criminal Division of the Justice Department was using the internet in an undercover capacity.  He logged onto the Internet Relay Chat ("IRC") system and located a channel entitled "100%preteenboysexpics."  He noticed that an individual using the nickname "BruceDC" was running an active file server with an advertisement that read to the effect: Free credit to boys under 16 with camera or willing to chat on the phone.  That same advertisement was viewed that same day by an agent of the Federal Bureau of Investigation ("FBI") in another city, and is the basis for Count One of the indictment.

A file server, often known as an "f-serve," is a computer that is configured by the user, through the use of special software, to permit selected files to be downloaded by the public, to allow the public to upload files to that computer, and to advertise on specific IRC channels a willingness to receive or distribute files.  Over the time period October 13, 2004 through January 14, 2005, defendant Bruce Schiffer operated such a file server on the "100%preteenboysexpics" IRC to make available to the public a collection of approximately 11,000 image and movie files of child pornography and erotic depictions of children.  The majority of these files are visual depictions of minors engaging in sexually explicit conduct as defined by 18 U.S.C. § 2256(2).  Many of these files depict known minor victims who have been previously identified by law enforcement.  The offensive pornographic nature of the images is evident from descriptions of them.  For example, one of these images, charged in Count Eleven, is a video clip entitled **[8=d]priv01[tied-up](465),** that depicts a young boy who appears to be 8 to 12 years of age fully naked, lying face down on a bed with his legs and arms bound behind him with rope while an adult male then attempts to insert his penis into the minor's mouth.

## B.  Descriptions of the Pornographic Images of Children

To make clear the nature of the physical evidence, the government proffers descriptions of a sampling of the other images which are charged in the indictment.  These images include, but are not limited to: In Count Two, **baby004.jpg (**this image depicts a 6-month-old baby with an adult male penis held up to his mouth); in Count Three, **boy.kiddy.mpg** (this movie file depicts two prepubescent boys masturbating each other in a bed); in Count Four, **lilone.jpg** (this image depicts an adult male performing anal intercourse on a male infant who is lying on his back); **torture12.jpg** (this image depicts a prepubescent girl who is hanging upside down by her

torso with rope, and an adult male is inserting his finger into her vagina); in Count Five,

**matthewds51.jpg** (this image depicts a toddler's face with eyes closed and an adult male forcing

his penis into the toddler's mouth); in Count Six, **baby003.jpg** (this image depicts an infant who

appears to be sleeping and an adult male ejaculating onto the baby's face) and **5y-assfuck1.mpg**

(this 3-second video file depicts the anal rape of a small child by an adult male); in Count Seven,

**gerber24.jpg** (a naked male toddler lying on a bed being penetrated in his rectum); in Count

Eight, **Pedo_2_8yo_boys_man.mpg** (this 5 minute 43 second movie depicts two prepubescent

boys performing oral sex on each other and then on an adult male); in Count Nine,

**Z1b_little_boy_bondage_11yo_and_men_Full_version.mpg** (this 1 minute 31 second video

depicts a minor who is bound with rope with his wrists behind his back and is aggressively

forced to perform oral sex on an adult male while being held by another adult male); Count Ten,

**cummingcompilation.mpg** (this 2 minute 9 second video file depicts a prepubescent boy

masturbating and a male performing oral sex on a prepubescent male child); and Count Eleven,

**kid_rape2-6.jpg** (this image depicts a toddler's torso from behind with the child's wrists  bound

behind the back with rope and an adult male is anally penetrating the child).

**C.  The Identification of Defendant and Execution of the Search Warrant at His Home**

During the investigation, the HTIU investigator observed numerous such images on

defendant's file server and worked with agents of the FBI to identify defendant as the person

responsible for this file server.  Investigators learned from the internet service provider that the

internet address for the file server was registered to defendant at his address in Washington, D.C.

at all relevant times herein.  Surveillance confirmed that defendant was residing at his listed

address in Washington, D.C.  A search warrant was obtained and was executed at defendant's residence on January 14, 2005.

During the search, a number of items were seized from defendant's bedroom,[1] including multiple computers and storage media, several books regarding child molestation, numerous pieces of sadistic and masochistic equipment which were on display in the bedroom, a clown suit, and two file boxes of correspondence to and from incarcerated pedophile-murderers.  Each of defendant's letters was typewritten, including his signature, and in many instances, he saved the envelopes reflecting his name and address.  The content of the letters revealed also that defendant visited a number of these convicts in prison, some of them multiple times.  In the letters, defendant discusses his desire to rape children and his sexual preference for boys ages six through sixteen.  Defendant writes in detail about his fantasy of taking in a runaway and "making use of them."

The computers seized from defendant's room were analyzed by the HTIU and the FBI.  A laptop computer seized from defendant's bedroom was found to be operating a Panzer-brand file server with a screen name and trigger of "Bruce DC," just as investigators had suspected.  That laptop computer was found to contain approximately 11,000 images and videos of child pornography.  The images were meticulously organized into subfolders and catalogued, indicating that defendant spent many hours refining and displaying his collection.  The seized images were analyzed by the National Center for Missing and Exploited Children ("NCMEC")

---

[1] Defendant had two other known roommates, who each had their own rooms.  They were interviewed and related that defendant always kept his door closed and that they were not aware of anyone but defendant ever using the computers in his room.  Neither knew anything about defendant's involvement with child pornography.

for known child victims.  The NCMEC maintains an enormous archive of child pornography with identifying data for the individual children depicted in many of the photos.  Identification of a known victim eliminates the possibility that an image has been generated solely by a computer. The NCMEC also has archived the images into "series," meaning a number of photos of one or more child victims appearing to have been taken around the same time and place.  The images possessed by defendant were found to contain over five hundred images and videos of known and identified child victims, including victims from over thirty known series.  The images and videos also contained a substantial number of sadistic and masochistic files, a number of which are charged in the Indictment and described above.  The majority of these were in the "bondage" folder in the "pics" directory, and several were in the "vids" folder.

**D.  The List of Local Runaway Shelters, Printout of Directions and the Clownsuit**

Other evidence that was seized provides further cause for concern.  On November 29, 2003, defendant had printed out a list describing the locations and details of youth/runaway shelters in the city, including Boys Town of Washington, which is described as housing boys and girls ages 8 to 18.  On May 24, 2004 (only two weeks after defendant had written the letter to an inmate stating that he wanted a runaway), defendant used the Internet to search for and print out a MapQuest route to Boys Town of Washington, 4801 Sargent Road, Washington, D.C.  Further investigation revealed that the starting point for the directions was one of defendant's places of employment.  Furthermore, among the items seized from defendant's bedroom was a clown suit.

**E. Summary of Evidence for Counts and Offenses**

To summarize, the government's evidence on each of the groups of counts charged in the indictment is as follows.  For Count One, which charges Advertising Child Pornography, in

violation of 18 U.S.C. § 2251(d), the evidence shows that on October 13, 2004, the defendant configured his computer to post an advertisement seeking boys under sixteen to send him streaming video via webcam or to talk to him on the telephone. If boys responded by sending video or calling, defendant would permit them to download as many images as they wanted from his file server. (Other individuals who used the file server would be provided with a small amount of "free credit" and then would have to upload images in order to be able download images from the server.) For Counts Two through Seven, Transporting Child Pornography, in violation of 18 U.S.C. §2252(a)(1), the government's evidence shows that defendant knowingly placed child pornographic images into files that he made available to the public and then allowed users to access the file server and download images, which users did, and thus caused the pornography to be transported. For Counts Eight through Ten, Receiving Child Pornography, in violation of 18 U.S.C. § 2252(a)(2), computer records similarly prove that defendant received child pornography through uploading images that users sent him, which he would then view and sort, deleting the ones he did not wish to retain. For Count Eleven, Possession of Child Pornography, in violation of 18 U.S.C. § 2252(a)(4), defendant possessed in his laptop computer approximately 11,000 well-sorted files depicting child pornography.

**(2) <u>The Weight of the Evidence</u>**

As discussed above, the evidence in this case will be extraordinarily strong as to the guilt of the defendant on these charges. The vast majority of the evidence is contained in electronic records directly traceable to defendant. The grand jury has already found probable cause that defendant committed the charged offenses and has handed up an indictment. All of these offenses charged in the indictment are defined as crimes of violence for purposes of the detention

statutes.  See 18 U.S.C. § 3156(a)(4)(C) (offenses under Chapter 110 - sexual exploitation and other abuse of children).  In addition, the sheer volume of evidence and the sophistication required to manipulate it indicate that defendant's offenses are far more serious than would be those of an individual who possesses only a few hard-copy photos.

**(3) The History and Characteristics of Defendant - Defendant Is a High Risk of Flight**

The defendant has a prior criminal history of felony sexual abuse and other offenses. Defendant was convicted in Henrico County, Virginia in 1991 in Case No. CR91-330-00F, for attempting to persuade another to commit sodomy, a felony.  On June 19, 1991, he was given a suspended sentence of 5 years, on the condition that he "keep the peace and be on good behavior for a period of 20 years," and on the condition that he serve 7 months in jail with credit for time served.  The conditional nature of that sentence indicates that defendant could face additional penalties in Virginia should he be convicted in the instant case.   A copy of that conviction is attached as Attachment A hereto.  On June 5, 2002, defendant was convicted of failure to appear on a misdemeanor charge in Newport News, Virginia.  On April 30, 2002, defendant had earlier been convicted on a separate charge of failure to appear on a misdemeanor charge in Newport News, Virginia.

This defendant presents a significant risk of flight.  He has two prior failures to appear in the recent past.  If given the chance, in light of the seriousness of the charges and the weight of the evidence, this defendant could easily seek to abscond.  The charges currently pending against defendant carry hefty maximum penalties: Advertising Child Pornography, in violation of 18 U.S.C. § 2251(d), a minimum term of fifteen (15) years in prison and maximum of thirty (30) years in prison; Transporting Child Pornography, in violation of 18 U.S.C. §2252(a)(1), a

minimum of five (5) years in prison, a maximum of twenty (20) years in prison; Receiving Child Pornography, in violation of 18 U.S.C. § 2252(a)(2), a minimum of five (5) years in prison, a maximum of twenty (20) years in prison; and Possession of Child Pornography, in violation of 18 U.S.C. § 2252(a)(4), maximum of ten (10) years in prison. The strength of the government's case against defendant and the high penalty it bears, give the defendant abundant incentive to avoid conviction by fleeing. 18 U.S.C. § 3142(f)(2)(A).

### D. **CONCLUSION**

Finally, the crimes which the defendant committed are atrocious in terms of the high number of children depicted, the outrageousness of the depictions which include rape and torture, and the technological skills which defendant used to disseminate the child pornography extensively over the worldwide web. The facts that defendant is known to have written about his desire sexually to abuse children and to exploit runaways, and was found in possession of directions to youth shelters is ominous. The nature of defendant's crimes, especially when combined with the surrounding circumstances, demonstrate that defendant is a danger to the community, and that there is no condition or combination of conditions which will reasonably assure the safety of any other person and the community. 18 U.S.C. §§ 3142(e); 3142(f)(2)(A).

WHEREFORE, for all of the foregoing reasons, the United States respectfully requests that the Court grant the motion by the United States to have the defendant held without bond pending trial.

Respectfully submitted,

KENNETH L. WAINSTEIN
UNITED STATES ATTORNEY

By:_____
JEANNE M. HAUCH
Assistant United States Attorney
Transnational and Major Crimes Section
D.C. Bar #426585
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 514-5776


_____
SARA L. GOTTOVI
Trial Attorney
Child Exploitation and Obscenity Section, Criminal
    Division
Department of Justice
D.C. Bar #460161
1400 New York Avenue, N.W.
Washington, D.C. 20530

13

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served by email and US Mail on counsel for the defendant, Michelle Petersen, Esq., and David Bos, Esq., Federal Public Defender for the District of Columbia, 625 Indiana Avenue, N.W., Suite 550, Washington, D.C. 20004, Fax: 202-208-7515 on this 15th day of June, 2005.

_____

JEANNE M. HAUCH
Assistant United States Attorney