IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : CRIMINAL NO. : 05-225 (PLF) |
| v. | : |
| BRUCE A. SCHIFFER, | : |
| Defendant. | : |

### GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully files this memorandum to aid the Court in its sentencing decision. For the reasons explained below, the government urges the Court to impose a sentence at the high end of the Sentencing Guideline range of 262-327 months.

**A.   BACKGROUND OF THE INVESTIGATION.**

The defendant spent months operating a computer file server that spread the most vile forms of child pornography over the Internet, and even published on the Internet an advertisement aimed at young boys to entice them to photograph themselves or other boys, so he could obtain more sexually explicit images that he could then collect and disseminate. In order fully to understand the egregious and disturbing nature of defendant's activities, a brief technological description is necessary.

A file-server, often referred to as an "f-serve," is a personal computer that the

operator configures, through the use of special software, to permit selected files to be downloaded by the public, to allow the public to upload files to that computer, and to advertise on specific Internet channels a willingness to receive or distribute files. Operators typically configure their file servers to allow the public to obtain files only after providing a minimum number files to the operator. File servers, therefore, operate as a "store" where the currency is filed, and offer an effective means to obtain and disseminate large quantities of material. Operators can configure their file servers to run advertisements touting the materials on their file servers in an area of the Internet known as Internet Relay Chat ("IRC"). Thus, file servers are a perfect conduit for possessing, receiving, distributing and advertising large quantities of child pornography.

From October 13, 2004 through January 14, 2005, defendant operated such a file server on an IRC channel called "#100%preteenboysexpics" using the nickname "BruceDC" and made available to the public a collection of approximately 11,000 images and movie files of child pornography and erotic depictions of children. Among the advertisements defendant displayed for his f-serve during the four-month course of his f-serve operation was an advertisement offering free child pornography to any minor under the age of 16 with a web cam. When an individual observed defendant's advertisement in IRC, he or she could type a "trigger," or password, that would permit a direct connection to defendant's computer. Once connected to defendant's computer, it was possible to view a directory of folders and files that defendant had selected

2

specifically for sharing and which contained thousands of child pornography images and movie files.  In order to access this material, a user first had to upload to defendant a certain number of "credits" or kilobytes of material.  This material was routed to a folder on defendant's computer called "downloads" which was automatically created by Panzer.

The user could then obtain materials from defendant's pre-designated directory, labeled "hy_uy," which was well-organized according to either the type of subject matter in the images, the first letter of the name of the victim depicted in the image, the "series" name, or in the case of movies, the size of the movie file.  Each time a user uploaded or downloaded material to or from defendant, Panzer automatically logged that user's screen name, the date of the user's access, and the files he or she uploaded and downloaded.  Defendant would periodically review the material deposited by users into the "downloads" folder, delete files he did not want to keep, and relocate files he did wish to keep into the "hy_uy" directory to be shared with other users.

During that time period, defendant's file server was observed by three different undercover investigators in three different states, and each downloaded from the defendant horrific examples of the most extreme child pornography available on the Internet today.  These three leads sparked an investigation that led to a search of defendant's Washington, D.C. residence on January 14, 2005.    On June 9, 2005, a federal grand jury returned an 11-count indictment charging defendant with one count of Advertising Child Pornography in violation of 18 U.S.C. § 2251(d), six counts of

3

Transporting Child Pornography in violation of 18 U.S.C. § 2252(a)(1), three counts of Receiving Child Pornography in violation of 18 U.S.C. § 2252(a)(2), and one count of Possession of Child Pornography in violation of 18 U.S.C. § 2252(a)(4). Defendant was arrested on June 10, 2005 at his residence in Washington, D.C., where agents had earlier seized defendant's file server. The file server contained computer forensic evidence confirming that over a three-month period, defendant trafficked in thousands of child pornography images and movies with over seven hundred Internet users worldwide.

### B. DEFENDANT'S OFFENSES WERE EGREGIOUS EVEN COMPARED TO OTHER CHILD PORNOGRAPHY TRAFFICKERS

A computer forensic investigation revealed that defendant's immense collection of over 11,000 child pornography images and movies was well organized alphabetically by file name, along with sub-folders for the type of sex act occurring in the image. Additional subfolders, sorted alphabetically, were created for "baby" and "bondage" which contained images of adults performing sex acts on infants, and sadistic and masochistic sexual abuse of children, respectively. Although the identities of many of the children depicted in child pornography on the Internet unfortunately remain a mystery to law enforcement, defendant's collection contained over 500 image or movie files of victims already identified by law enforcement agencies. To give the Court a sense of the vile and outrageous nature of the images in defendant's collection, one video clip entitled **[8=d]priv01[tied-up](465).mpg** depicts a young boy who appears to be 8 to 12 years

4

of age fully naked, lying face down on a bed with his legs and arms bound behind him with rope while an adult male attempts to insert his penis into the minor's mouth. Another image, **baby004.jpg**, depicts a 6-month old baby with an adult male penis held to his mouth. Still another image, **lilone.jpg**, depicts an adult male performing anal intercourse on a male infant who is lying on his back, while **torture12.jpg** depicts a prepubescent girl who is hanging upside down by her torso with rope while an adult male inserts his finger into her vagina.

Almost as disturbing as the images and videos themselves were the two files boxes of correspondence to and from incarcerated pedophile-murderers that agents found in defendant's bedroom during the search. Each of defendant's letters was typewritten, many including his signature, and in many instances, he also saved the envelopes reflecting his name and return address, along with the letters he received in response. The content of the letters revealed that defendant visited a number of these convicts in prison, some of them multiple times. In the letters, defendant discusses his desire to rape children and his sexual preference for boys ages six through sixteen. Defendant writes in detail about his desire to take in a runaway and "make[] use of them." Defendant was most prolific and probing in his correspondence with convicted murderer Sam Manzie, who in 1997, at the age of 15, abducted, raped and murdered an 11-year-old boy. In one letter, defendant writes:

> I mentioned earlier about you and I fucking a young boy or girl from
> both ends. I have to  say  I  have had that fantasy since I started

5

>talking to you. We lay a young toy on his/her back and one of us buries ourself [sic] deep in his/her ass and the other chokes it on our cock. While doing this we lean in and kiss, not even acknowledging the toy below us. . .Would I be asking too much if at some point in the future I asked you to tell me about the day you committed the murder?

More sinister still is the fact that evidence seized from his bedroom indicates that on November 29, 2003, defendant printed out a list describing the locations and details of youth/runaway shelters in the city, including Boys Town of Washington, which is described as housing boys and girls ages 8 to 18. On May 24, 2004, only two weeks after defendant had written a letter to an inmate stating that he wanted to abuse a runaway, defendant used the Internet to search for and print out a Mapquest route to Boys Town of Washington, 4801 Sargent Road, Washington, D.C. Further investigation revealed that the starting point for the directions was one of defendant's places of employment.

Furthermore, among the items seized from defendant's bedroom were several books containing stories of child molestation, numerous pieces of sadistic and masochistic equipment that were on display in the bedroom, and a clown suit.

### C. DEFENDANT'S CRIMINAL HISTORY INVOLVES THE SOLICITATION OF A MINOR

Defendant was convicted in a Virginia state court in 1991 of criminal solicitation, *i.e.*, attempting to persuade another to commit sodomy. This offense involved defendant contacting through the mail a 17-year-old boy whom he knew and then arranging to

meet with him for sex, where defendant was apprehended by an undercover officer.

     **D.    THE PLEA AGREEMENT CALLS FOR A GUIDELINES RANGE OF 262-327 MONTHS.**

Pursuant to the Plea Agreement, defendant has pleaded guilty to Count 1 (Advertising Child Pornography), Count 2 (Transporting Child Pornography), Count 8 (Receiving Child Pornography, and Count 11 (Possessing Child Pornography). Advertising carries a mandatory minimum penalty of 15 years and a statutory maximum penalty of 30 years. Transporting and Receiving both carry mandatory minimum penalties of 5 years and statutory maximum penalties of 20 years. Under the terms of the Plea Agreement, defendant has agreed to a Criminal History Category of III.[1]

Defendant has agreed in the Plea Agreement that there are sufficient facts to establish that his Base Offense Level is 40, minus three points for acceptance of responsibility, resulting in a level of 37 with a Guidelines range of 262-327 months. The government has agreed not to seek an upward departure from the applicable Guidelines range.

In calculating the Base Offense Level, the U.S. Probation Office agrees with the calculations in the Plea Agreement, but has added an additional 5 points for a pattern of activity involving the sexual abuse or exploitation of a minor under USSG §

---

[1] While both the plea agreement and the Probation Office have arrived at that same conclusion, the Probation Office appears not to have given defendant one point for the 30-day suspended sentence he received in 2002, though the reason for this is unclear.

2G2.2(b)(5), resulting in a Level 45, or 42 with acceptance of responsibility. The government concludes that such an enhancement does not apply in this case. This enhancement applies only if the defendant engaged in a "pattern of activity involving the sexual abuse or exploitation of a minor," which is defined as "two or more separate instances of sexual abuse or sexual exploitation of a minor by the defendant." §2G2.2 and application note one. Defendant did not commit any actual sexual physical abuse of any minors in the instant case that would qualify as "sexual abuse or sexual exploitation of a minor" under the definition in §2G2.2, Application note 1, which specifically excludes possession, receipt, or trafficking in material relating to the sexual abuse or exploitation of a minor. Nor has he engaged in a "pattern of activity involving prohibited sexual conduct" under §4B1.5(b). The instant offenses apparently would qualify as "prohibited sexual conduct" under Application Note 4 to USSG §4B1.5(b) "only if, prior to the commission of the instant offense of conviction, the defendant sustained a felony conviction for [] trafficking in child pornography." As that is not the case here, because defendant's prior conviction was for committing sodomy with a minor, not for trafficking in child pornography, this enhancement and its additional five points do not apply.

    The defendant also has agreed to not oppose the government's recommendation that he serve a term of supervised release for the remainder of his life. He has agreed to special conditions of supervised release, including participation in a sexual disorder

treatment program, periodic polygraph examinations, that he shall not possess any pornography, erotica, or nude images, that he shall have no unsupervised contact with any minor child unless approved by his Probation Officer, that he shall register as a sex offender, and that he shall submit to searches by the Probation Office of his person, vehicle, office, residence and property, including computers. Defendant has agreed further as conditions of supervised release that he shall provide a DNA sample, that he shall consent to the installation of monitoring software on his computer, and that any revenue he receives from any account of the events giving rise to this prosecution shall be turned over to the United States unless subject to a court order for victim restitution.

Finally, defendant has agreed to pay a fine of between $20,000 and $200,000, as well as a $400 special assessment. He also has agreed to forfeit all property seized from his residence during a search on January 14, 2005.

### E. THE DEFENDANT'S CRIMES CALL FOR A SENTENCE AT THE HIGH END OF THE APPLICABLE GUIDELINES RANGE.

The defendant's actions in advertising, distributing, receiving, and viewing thousands of images of children, some mere infants, engaging in sexual activity or being bound and sexually tortured are truly beyond the pale. Our society should not tolerate such a calculating and despicable course of conduct. Defendant's actions directly fueled the worldwide market for child pornography, a market that can only exist if innocent children are victimized by those who create the images and if those children are

exploited by those who trade and view them. Each child in each of the thousands of images that defendant advertised, transported, received and possessed is a victim. The vulnerable children in these images forever have been robbed of their innocence and spirit, and likely will carry permanent psychological and emotional scars, if not physical scars as well. Clearly, both Congress and the U.S. Sentencing Commission understood the seriousness of child pornography offenses when they created the relevant statutory mandatory minimum penalties and sentencing enhancements, which serve not only to punish offenders, but to deter such criminal conduct by others.

 Moreover, defendant's history demonstrates the need to protect the public from any further criminal activity by him. He already has shown a willingness to act upon his impulses through his 1991 conviction. His interest in engaging in sexual activity with and violence toward children has been borne out more recently not only by his voluminous and horrific collection of child pornography and his efforts to enhance that collection exponentially by advertising and operating his file server, but also by his active outreach efforts to befriend multiple convicts who have either molested, raped or murdered children. The additional items found in defendant's bedroom - including printed directions to the local youth shelter that he printed only days after telling a convicted pedophile that he wanted a runaway to "make[] use of" - are chilling. They only serve to underscore the grave danger that the defendant poses to the children in our community and to society at large.

Each of these facts provides ample support for the government's position that defendant should receive a significant sentence at the high end of the Guidelines range of 262-327 months.

Respectfully submitted,

KENNETH L. WAINSTEIN
United States Attorney
D.C. Bar Number 451058

By: _____
      Jeanne M. Hauch, DC Bar # 426585
Assistant United States Attorney
District of Columbia
National Security Section
555 4th Street, N.W.
Washington, D.C. 20530
(202) 514-5776

_____
Michelle Morgan-Kelly, DE Bar #3651
Assistant United States Attorney
Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94531
(415)436-6960
(Formerly of the Child Exploitation and
Obscenity Section, Washington, D.C.)

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served by email, fax and US Mail on counsel for the defendant, Michelle Petersen, Esq., and David Bos, Esq., Federal Public Defender for the District of Columbia, 625 Indiana Avenue, N.W., Suite 550, Washington, D.C. 20004, Fax: 202-208-7515 on this 28th[th] day of February, 2006.

                                                 _____
                                                 JEANNE M. HAUCH
                                                 Assistant United States Attorney