**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,  ) | |
| ) | |
| v.  ) | Case No. 05-225 (PLF) |
| ) | |
| BRUCE SCHIFFER,  ) | |
| Defendant.  ) | |
| _____  ) | |

**DEFENDANT'S MEMORANDUM IN AID OF SENTENCING**

Bruce Schiffer, by his attorneys, David W. Bos and Michelle Peterson, Assistant Federal Public Defenders, hereby submits the following memorandum in aid of sentencing in this matter. For the reason outlined in more detail below, Mr. Schiffer respectfully requests that the Court sentence Mr. Schiffer to a period of 180 months in prison. In support of this request, counsel states:

1. Mr. Schiffer appears before the Court for sentencing after having pled guilty to one count of Advertising Child Pornography, in violation of 18 U.S.C. § 2251, one count of transporting child pornography, in violation of 18 U.S.C. § 2252, one count of receiving child pornography, in violation of 18 U.S.C. § 2252, and one count of possession of child pornography, in violation of title 18 U.S.C. § 2252(a)(4).

2. Between September 1, 2004, and January 14, 2005, Mr. Schiffer operated a file server on which he and others could exchange computer files containing child pornography. Mr. Schiffer was first contacted in connection with the charges listed in the indictment on January 14, 2005. On that date, members of the FBI executed a search warrant for the home in which Mr. Schiffer was residing. Pursuant to the search warrant, the FBI agents removed several items from Mr. Schiffer's home, including a computer and several computer storage devices. The FBI agents also interviewed Mr.

Schiffer. Mr. Schiffer admitted to the agents that he operated the file server on which the pictures containing child pornography were stored. Although the files found on Mr. Schiffer's computer were graphic, Mr. Schiffer was never involved in the production of child pornography and the Government concedes that Mr. Schiffer never committed any "actual sexual abuse or sexual exploitation of a minor." Government's Memorandum In Aid of Sentencing, at p. 7.

**DISCUSSION**

**I.     THE POST BOOKER SENTENCING FRAMEWORK**

Under Justice Breyer's majority opinion in Booker, the "district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing. See 18 U.S.C. § 3553(a)(4)." United States v. Booker, __ U.S. __, 2005 WL 50108,*27 & n.1 (U.S. Jan. 12, 2005) (Breyer, J.). While holding that district courts should still consider the Guideline calculations and ranges for sentencing purposes, the remedial majority in Booker held that courts must consider all the purposes of sentencing set forth in 18 U.S.C. § 3553(a). Among the matters that §3553(a) requires the sentencing judge to consider are:

> (4) the kinds of sentence and the sentencing range established for--
> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines--
> (I) issued by the Sentencing Commission ....
> (5) any pertinent policy statement--
> (A) issued by the Sentencing Commission ....
> 18 U.S.C. § 3553(a)(4), (5).

Pursuant to Booker, therefore, courts must treat the Guidelines as but one, among several, sentencing factors.

Pursuant to 18 U.S.C. §§ 3562 and 3553(a)–which were explicitly endorsed by the Supreme Court in Booker–sentencing courts should consider the need for the sentence imposed

2

       (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

       (B) to afford adequate deterrence to criminal conduct;

       (C) to protect the public from further crimes of the defendant; and

       (D) to provide the defendant with the needed educational and vocational training, medical care, or other correctional treatment in the most effective manner.

Specifically, courts should "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" set forth above.

Section 3553(a) further directs sentencing courts to consider the nature and circumstances of the offense, the history and characteristics of the defendant, the range of sentences available, the need to avoid unwanted sentencing disparities among defendants with similar records who have been found guilty of similar conduct, and the need to provide restitution to any victims of the offenses charged.

Pursuant to 18 U.S.C. § 3661, also expressly endorsed by the Booker majority:

No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purposes of imposing an appropriate sentence.

Section 3582 of Title 18 states that

[t]he court, in determining whether to impose a sentence of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in Section 3553(a) to the extent that they are applicable, recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation.

Taken together, the directives of Booker, as well as Sections 3553, 3661, and 3582 of

Title 18, make it clear that sentencing courts may no longer consider the Guidelines alone in determining the appropriate sentence. With respect to *departures* from the Guideline range, in particular following Booker, courts need not justify sentences outside the Guidelines by citing factors that take the case outside the "heartland." Rather, as long as the sentence imposed is reasonable and supported by the factors outlined in Section 3553, courts may disagree with the range proposed by the Guidelines in individual cases and exercise their discretion.

With regard to appropriate methodology in determining the appropriate sentence post-Booker, the Defendant urges the Court to adopt the approach delineated by District Court Judge Adelman in United States v. Smith, Case No. 02-CR-163.  First, the Court must determine the applicable advisory guideline range.  Second, the Court must determine whether, pursuant to the Sentencing Commission's Policy Statements, any departures from the advisory guideline range apply.  Finally, the Court must determine the appropriate sentence in light of the factors set forth in 18 U.S.C. §3553(a).

Advisory Guideline Range

The Probation Department, using the 2005 edition of the Sentencing Guidelines Manual, has concluded that the Adjusted Offense Level in Mr. Schiffer's case is 37 and that Mr. Schiffer's Criminal History Category is III, resulting in an advisory sentencing range for imprisonment of 262 to 327months. The Defendant, however, disputes the computation of his Criminal History Category calculation.[1] The correct Criminal History Category is I.  Therefore,

---

[1] Although the defendant raised this objection in a letter faxed to the United States Probation Office on July 10, 2005, it appears that the Probation Office did not receive the fax until after the final report was prepared.  For that we apologize.  We have attached a copy of the letter for the Court's convenience and have resubmitted the letter to the Probation Office.

the correct advisory sentencing range for imprisonment in Mr. Schiffer's case is 210 to 262 months, in Zone D of the Sentencing Table.

A. Offense Level Computation

The Defendant does not object to the offense level computation in this case.

B. Criminal History Computation

Mr. Schiffer disputes the Probation Department's calculation of his criminal history. Specifically, Mr. Schiffer disputes the assessment of two criminal history points in case number CR91-0330-00F, in which Mr. Schiffer received a sentence of 5 years in prison with all but seven months suspended. As noted in the Pre-Sentence Report, the sentence in that case was imposed in 1991. Under USSG 4A1.2(b), "[i]f part of a sentence of imprisonment was suspended, 'sentence of imprisonment' refers only to the portion that was not suspended." The "sentence" in the 1991 case, for Guideline purposes, was therefore 7 months imprisonment. Because the "sentence of imprisonment" in the 1991 case, as defined by 4A1.2(b)(2), was less than one year and one month, and was imposed more than ten years before "the defendant's commencement of the instant offense," the conviction is not counted under USSG 4A1.2(e)(1) and (2).

Mr. Schiffer also disputes to the assessment of two criminal history points pursuant to USSG §4A1.1(d). As the PSR notes in Paragraph 40, the probationary period in the 1991 case was closed on August 11, 1993. Therefore, the Defendant was not under a criminal justice sentence at the time the instant offense was committed.

The Defendant's Criminal History Category is I, resulting in a advisory guideline sentence of imprisonment of 210-262 months.

C. Potential Departure Considerations Under the Advisory Guidelines

As noted above, among the matters that §3553(a) requires the sentencing judge to consider with regards to the advisory guidelines are:

> (4) the kinds of sentence and the sentencing range established for--
> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines--
> (I) issued by the Sentencing Commission ....
> (5) any pertinent policy statement--
> (A) issued by the Sentencing Commission ....
> 18 U.S.C. § 3553(a)(4), (5).

Imposition of Sentence

As noted above, pursuant to 18 U.S.C. §§ 3562 and 3553(a) sentencing courts should consider the need for the sentence imposed 1) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; 2) to afford adequate deterrence to criminal conduct; 3) to protect the public from further crimes of the defendant; and 4) to provide the defendant with the needed educational and vocational training, medical care, or other correctional treatment in the most effective manner.

Section 3553(a) further directs sentencing courts to consider the nature and circumstances of the offense, the history and characteristics of the defendant, the range of sentences available, the need to avoid unwanted sentencing disparities among defendants with similar records who have been found guilty of similar conduct, and the need to provide restitution to any victims of the offenses charged. Specifically, courts should "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" set forth above.

1. Nature of the Offense

Mr. Schiffer in no way intends to diminish the seriousness of this offense but notes he has

never been involved in the production of child pornography and, as noted above, the Government concedes Mr. Schiffer never committed any "actual sexual abuse or sexual exploitation of a minor." <u>Government's Memorandum In Aid of Sentencing</u>, at p. 7.

2. Character of the Defendant

Mr. Schiffer has one prior conviction that occurred nearly fifteen years ago, when he was nineteen years old. After two years of supervision, Mr. Schiffer's probation officer petitioned the court to terminate Mr. Schiffer's probation because Mr. Schiffer was a model probationer. That request was granted by the court in 1993.

As noted in the Pre-Sentence Report Mr. Schiffer has one child, a daughter. Mr. Schiffer has joint custody of his daughter with his parents. Before his arrest in this case, Mr. Schiffer maintained weekly contact with his daughter. There have never been any allegations of abuse of any kind towards his daughter. This conviction has been tremendously hard on Mr. Schiffer in that it has exposed his illness to the public at large, but more importantly to his daughter and his parents whom he loves deeply. They remain supportive of him despite the conviction and seek the Court's mercy and society's assistance in monitoring and treating Mr. Schiffer's sexual disorder. Mr. Schiffer also has the support of his friends, including his former roommate whose life was disrupted by the FBI search of their home and seizure of her computer, as is evidenced by the letters submitted under separate cover.

Mr. Schiffer also has a long, stable and exemplary employment history. His last employer noted that Mr. Schiffer's "attendance, ability and reliability were all good." Another employer describes Mr. Schiffer as a "solid employee" who was "punctual, professional and courteous."

Mr. Schiffer suffers from a sexual disorder. It "is an affliction, and not simply the result

of a choice that he has made." (See report of Dr. Fred Berlin submitted under separate cover).[2]

As such, he needs rehabilitation and treatment more than punishment. Unfortunately, the Bureau of Prisons is not equipped to provide either.

3. Needs of the Public

Although there is no question Mr. Schiffer must be held accountable for his actions, the needs of the public are more than satisfied by a 180 month sentence in this case, given that Mr. Schiffer will be under the strict supervision of the Probation Department for the rest of his life pursuant to the specific terms of the supervision to which Mr. Schiffer agreed as part of the plea agreement in this case. As the Court will recall, the plea agreement **requires** Mr. Schiffer to participate in a program of treatment for sexual disorders. The agreement also requires Mr.

---

[2]  Counsel had requested a longer continuance of this sentencing because of dissatisfaction with the depth of Dr. Berlin's report and a desire to have further evaluations completed. Although counsel has retained additional experts for that purpose (at considerable expense) the reports have not been completed. Moreover, contrary to the Government's understanding, counsel simply were not in a position to the hire additional experts to complete the evaluations more expeditiously. Counsel therefore request the Court to reconsider allowing counsel additional time to complete the process.

Mr. Schiffer is facing a mandatory minimum sentence of fifteen years in prison, followed by a lifetime period of supervised release. He entered a very early plea in the case and waived a preliminary hearing and detention hearing. Counsel understand that there have been two prior continuances of the sentencing, but the continuance requests in no way has been to the benefit of Mr. Schiffer. This is not a situation where Mr. Schiffer is in the community – he is locked up at the D.C. Jail and subjected to conditions we would all find appalling in a third world country. Nor is this a case in which a victim must endure the anxiety of preparing for a sentencing hearing that is continued at the last minute.

Counsel are mindful of the Government's justifiable concern for closure in this case. But this is a complex case involving very severe penalties. Indeed, counsel for Mr. Schiffer are not delaying the process for any reason other than to ensure the Court has sufficient information to make an appropriate judgement about Mr. Schiffer's sentence. Counsel sincerely apologize for their inability to secure the evaluations in a more timely fashion, but can assure the Court that this has not been for a lack of effort and the requested continuances were for no improper purpose.

Schiffer to submit to periodic polygraph examinations, as directed by the probation department. Mr. Schiffer will not be allowed to have any unsupervised contact with any minor unless the probation department specifically approves the contact. Mr. Schiffer has also agreed to allow the probation department to search his residence or any other property, including any computer device, at any time. In addition, Mr. Schiffer has agreed to have installed on any computer to which he has access, a tracking program allowing the probation department to monitor his activity. Indeed, upon his release, Mr. Schiffer will be more closely supervised than any other offender. And that supervision will occur for the rest of Mr. Schiffer's life.

Despite the very onerous mandatory minimum sentence and extremely high guideline range, Mr. Schiffer immediately accepted responsibility for his actions. He waived a preliminary hearing **and** a detention hearing, agreeing to be housed at the D.C. Jail immediately upon his arrest, despite the fact that the government had allowed him to remain on the street for six months after discovering the crime, an argument that would have seriously undercut a suggestion of dangerousness. Additionally, Mr. Schiffer willingly agreed to life-long supervision. He does not want to repeat his offending behavior. Instead, Mr. Schiffer wants assistance in controlling his desires and is willing to do whatever is necessary, including taking medication, as a part of future treatment, to ensure that he is successful.

4. Consideration of Guidelines

As the Court well knows, congress' primary purpose in enacting the Sentencing Guidelines was to remove disparities in sentencing and ensure that more egregious conduct is punished more severely than less egregious conduct. As noted earlier, Mr. Schiffer has never been involved in the production of child pornography and the Government concedes Mr.

Schiffer never committed any "actual sexual abuse or sexual exploitation of a minor" in connection with this offense. Yet, any sentence above 180 months will be higher than sentences imposed by other courts in cases with far more egregious conduct. See, United States v. Wright, 373 F.3d 935 (9th Cir. 2004)(180 month sentence imposed where defendant photographed himself engaging in "actual and simulated sexual intercourse, including genital-genital, oral-genital and anal-genital actual and simulated intercourse" with his 11 month old son); United States v. Sharpley, 399 F.3d 123 (2nd Cir. 2005)(180 month sentence impose where defendant, who had previously been convicted of first degree sexual abuse, photographed himself having sex with pre-teenage boy); United States v. Rast, 293 F.3d 735 (4th Cir. 735)(120 month sentence imposed where father video-taped woman performing "a sex act" on his 12 year old son); United States v. Simmons, 343 F.3d 72 (2nd Cir. 2003)(168 month sentence imposed where defendant video taped himself sexually abusing unconscious girl); United States v. Croxford, 324 F. Supp. 2d 1230 (D. Utah 2004)(Cassell)(148 month sentence imposed where foster father photographed female foster children and posted photographs on the internet). The "need to avoid unwanted sentencing disparities" therefore warrants an 180 month sentence in this case.

       For the forgoing reasons, we urge the Court to sentence Mr. Schiffer to a period of

probation of 180 months.

                                      Respectfully submitted,

                                      A.J. KRAMER
                                      FEDERAL PUBLIC DEFENDER

                                      "/s/"
                                      Michelle Peterson

                                      "/s/"
                                      David W. Bos
                                      Assistant Federal Public Defender
                                      625 Indiana Avenue, N.W., Suite 550
                                      Washington, DC  20004
                                      (202) 208-7500